Davis, J.
We assume that Whalen was .not a fellow servant with the plaintiff and .that the plaintiff was actually under the direction and control of Whalen in doing the work on which the plaintiff was engaged at the time he was injured, since the jury must have so found under the instructions of the court. It is a conceded fact, however, that the plaintiff entered into employment with the defendant under a written contract or statement to the effect that he had read and understood certain rules of the defendant relating to such-employment and that he would obey them. One of those rules provided that car inspectors “are required to be fully conversant with the rules governing interchange of cars and inspect cars in accordance with the same and with instructions issued by the superintendent of motive power,” and “when inspecting and repairing cars that should not be, moved, they must protect themselves by placing conspicuously a blue signal at both ends of the car, as provided in rule 36.” Another rule requires that “car repairers report to and receive their instructions from the foreman of car repairers under the authority of the master mechanic;” and “they are required in all cases when doing work on or under the cars which should not be moved, to see for themselves that a blue flag by day, or a blue light by night, is *458 placed at each end of - the car, upon which they are working.” The rule 36, which has been referred to, reads as follows: “A blue flag by day and a blue light by night, placed on the end of a car denotes that car inspectors or car repairers are at work under or about the car or train. The car or train thus protected must not be coupled to or moved, until the blue signal is moved by the car inspectors or car _ repairers.”
. It is a humane requirement of the law that railroad companies shall make such reasonable rules and regulations as will tend to minimize accidents in the conduct of their hazardous business. The rules in question not only put it in the power of car inspectors or car repairers to absolutely safeguard themselves when at work under or about a car or train of cars; but it is made the imperative duty of engineers and trainmen to respect the signals. The car or train which carries a blue signal is “protected” and “it must not be coupled to or moved.” The rules are therefore fair and reasonable; and indeed they impose on the railroad operatives no more than ordinary care in the preservation of life and the prevention of injuries.
The stipulation in the contract of employment that the plaintiff would obey these rules and “see for himself” that the signals required for his protection were displayed, is not void as against public policy; because it does not exempt the railroad company from liability, or limit its liability, for the consequences of its own negligence. Pennsylvania Co. v. Shearer, 75 Ohio St., 249. It is no more and no less than what it purports to be, a reasonable condition in the contract of employ *459 ment that the employe will- faithfully observe the rules which are essential to his own safety.
The plaintiff in this case admits that with full knowledge of the purport of the rules, he signed a written promise to obey the rules, which required him “in all cases,” when at work on or under a car which should not be moved, “to see for himself” that the proper signals were “conspicuously” displayed. He admits that at the time he was hurt he and Whalen did not “see for themselves” that the signals were placed as required by the rules; and that in consequence of that omission, although the contractual obligation may have been on both of them and upon one as much as the other, he was injured. But he claims, and the jury was so instructed by the court, that because of the presence of a superior, Whalen,, whose duty to likewise observe the rules is undisputed, and because Whalen had directed the plaintiff where to work and what to do, the plaintiff is entitled to recover, if he “proceeded to do the work under ■such conditions and circumstances as gave him to understand, and the right to understand, in face of the rules requiring him to place a blue flag at either end of the cars that such flags had been so placed by Whalen.” In other words, although he had not been told by Whalen to disregard the rule and although he had not looked to see if the signals were placed and nothing had been said on the subject, he had the right, when called by Whalen to come and help him on the repairs on which Whalen was working,- to take it for granted that Whalen had done his duty, or to infer from Whalen’s conduct and surrounding circumstances, that the rule was suspended for the time being.
*460 This theory of the case does not seem to us to be tenable. For aught that appears the rules were equally obligatory on both Whalen and the plaintiff. They certainly were binding on the plaintiff and the violation of the rules by Whalen, whether he were a superior or not, could not release the plaintiff from his contractual obligation, which was made for the benefit of both himself and his employer. Nor could Whalen either expressly or impliedly' suspend the operation of any rule for a single .moment. It does not appear in the record, and is not to be presumed, that he had any authority from the company to make contracts or enact rules for it; and if he had no authority to make them, he had no authority to break them, or to disregard, abrogate, suspend or repeal them. Neither can such authority be implied from the fact that Whalen had authority to direct and control the plaintiff in the performance of his duties as a car repairer. His authority to control and direct was authority to control and direct within the limitations of the rules prescribed by the Company for the government of all employes. The rules required that car inspectors should “be fully conversant * * * with instructions issued by the superintendent of motive power” and that “when inspecting and repairing cars that should' not be moved, they must protect themselves by placing conspicuously a blue signal, * * * as .provided in rule 36.” Both Whalen and the plaintiff therefore must have known that rule 378 made it imperative to put out the signals “in all cases when doing work on or under cars which should not be moved.” There is no room here f.or misunderstanding or implication. The rule is to apply in all *461 cases, and therefore neither had Whalen the right to waive the rule in any case nor had the plaintiff any right to infer a waiver of it in any case. There is not even room for an argument from the necessity of the case; for the plaintiff could have obeyed the order of his superior and still have protected himself from injury by obeying the rule. He chose rather to take the chances in the performance of a little task which probably would take less time than would be consumed in putting the blue flags at each end of the cut of cars.- It was a plain assumption of the risk by the plaintiff, in the sense of taking the chances, a risk which he had expressly agreed with his employer that he would not take. Richmond & Danville Railroad Co. v. Finley, 63 Fed. Rep., 228, 231. It was said by Brewer, J., in Atchison, T. & S. F. R. Co. v. Reesman, 60 Fed. Rep., 370, 378, that, “The question is not one of obedience to orders, but of a compliance with rules; and, generally speaking, the duty of compliance is not waived by the mere fact that some controlling official has knowledge of the failure to comply.”
A different result might be reached if there were an. habitual violation of the rule, with knowledge thereof and acquiescence therein by such officers of the company as are authorized to act in its behalf in the making and changing of rules; but such a state of facts is expressly disclaimed in this case.
The views which we have here expressed are strongly supported in York, Admr., v. C. M. & St. P. Ry. Co., 98 Ia., 544, in which an engineer disobeyed a rule in obeying the conductor’s signal to start the train and was injured; in Rich *462 mond & Danville Railroad Co. v. Rush, 71 Miss., 987, in which a brakeman was injured through breach of a rule while obeying an order of the conductor; in a similar case in Russell v. Richmond & Danville Railroad Co., 47 Fed. Rep., 204; in Atchison, T. & S. F. R. Co. v. Reesman, 60 Fed. Rep., 370, involving the violation of a rule with knowledge and assent of the conductor, in Richmond & Danville Railroad Co. v. Finley, 63 Fed. Rep., 228, where there was a violation of a rule' in obedience to order of engineer or conductor; and in Alabama Great Southern R. R. Co. v. Roach, no Ala., 266.
The defendant in error invokes the authority of Van Duzen Gas & Gasoline Engine Co. v. Schelies, 61 Ohio St., 298. We do not regard that case as controlling upon the facts here presented. Cincinnati Gas & Electric Co. v. Johnston, 76 Ohio St., 119.
The court of common pleas erred in refusing to direct a verdict for the defendant on the undisputed facts and the circuit court erred in affirming the judgment of the court of common pleas. The judgments of both courts are

Reversed and Judgment rendered for Plaintiff in Error.

Shauck, C. J., Crew and Spear, JJ., concur.